Opinion of the court by Judge Peck.
[Catron, Judge,
dissented.] The act of 1801, ch. 18, was designed to turn an equitable remedy into a legal one, but was never designed to destroy the equitable remedy. It is on this account that the act is taken with strictness. The difficulty of making the proof of notice, as required by the act, is a strong reason why the party aggrieved should have his remedy in the court of chancery, as he would have had it,had the act never passed. The number of our acts in favour of securities, the tenor of them all, evinces what was the mind of the legislature. Take for instance, the act of 1801, ch. 15, and we find provision made for the security against whom judgment has passed: before payment of the money by such security, he may have judgment and execution against the principal debtor. This is founded in good sense, and is the essence of justice.— While the plaintiff is coercing the money from the security, the security has a writ given him by this act, by *478 which he can reach the person or effects of a doubtful, or *■ faithless principal.
The rule in commercial law, that an endorser shall jjaye not¡Ce of non-payment by the maker before, such in-dorser shall be liable, is founded in great wisdom. What is an indorser, but a security for the money resting on the condition of notice? The acts of 1801, ch. 15 and 18; make in some respects a parallel case; by them the security has afforded liim an opportunity of redress out of the eifectsof the maker; true, no writ is given, but the law supposes a maker may he reached through his honor, and that the indorser can thus be indemnified. Our law delights in placing parties in the situations they ought in reason to occupy. It supposes there is no magic in a bond, and that so far as a security is concerned, some alleviation is necessary. He may when sued, let judgment pass, prove his condition as a security, have hisjudgment and execution, and like an indorser seek indemnity out of the effects of his principal; but to be énabled to do this, he must have the countenance and aid of the obligee. Unless the obligee will sue, the security is paralized; and it is on this the equitable principle is based, that if the obli-gee will stand and mock at the anticipated calamity of a security, equity will interpose; and the ground on which relief is given resolves itself, 1st, in the fact of request from the security to sue; and 2nd, a probability that if suit had been brought the money might have been made. To delay under such circumstances is against conscience, and in its effect is a fraud upon tile security; request in this case was made, and the suit was delayed two years after. That the money might have been made out of the principal, had the obligee been prompt on receiving notice, is made by the evidence even more than probable.— But it is said he was not bound to go to Alabama to sue. Why not? But be that as it may, however, the principal had effects in this State, and no attempt whatever is made to reach them. The decree of the Chancellor is affirmed with costs.
Decree affirmed^